# UNITED STATES DISTRICT COURT

for the

Middle District of North Carolina

In the Matter of the Search of

*(Briefly describe the property to be searched or identify the person by name and address)*

INFORMATION ASSOCIATED WITH (336) 929-2016 THAT IS STORED AT PREMISES CONTROLLED BY T-Mobile USA, Inc. / Metro PCS

Case No. $\text{1:19mtj344}$

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
Information associated with telephone number (912) 276-2402, that is maintained by T-Mobile USA, Inc. / Metro PCS

located in the _____ District of _____New Jersey_____ , there is now concealed *(identify the person or describe the property to be seized)*:
All data about which "cell towers" (i.e. antenna towers covering specific geographic areas) and "sectors" received a signal from the cellular telephone (336) 929-2016 from September 1, 2018 to October 31, 2018

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC 846 | conspiracy to distribute Schedule II controlled substances |
| 21 USC 843(b) | use of communications facilities in commission of narcotics offenses |

The application is based on these facts:
See attached affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of __30__ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

James P Hughes, Special Agent- DEA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 10/23/19 8:45 AM

_____
*Judge's signature*

City and state: Durham, North Carolina

Joe L. Webster, United States Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF APPLICATION

I, James P Hughes, Special Agent, Drug Enforcement Administration (DEA), Greensboro, North Carolina, being duly sworn, depose and state as follows:

1. I am a "federal law enforcement officer" within the meaning of Section 2510(7) of Title 18, United States Code, that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 21, United States Code.2. I am a Special Agent of the Drug Enforcement Administration (DEA). I have been employed by the DEA since June 2004 and am currently assigned to the DEA Greensboro Resident Office (GRO). I have attended numerous training programs relating to drug trafficking, and I am experienced in investigating drug traffickers. I am familiar with the use of various forms of electronic surveillance as investigative tools. I have participated in investigations involving cocaine hydrochloride (HCl), cocaine base (crack), marijuana, methamphetamine, heroin, and various other controlled substances. Prior to becoming a Special Agent with DEA, I was a City of Greensboro, Greensboro, NC Police Officer serving for eight (8) years. As a DEA Special Agent, I was assigned to the Imperial County District Office of the San Diego Field Division from 2004 to 2012. I have participated and led investigations international in

1

scope, involving, but not limited to, physical surveillance, undercover transactions, court ordered pen registers, the use of wire and electronic communication interceptions, and both state and federal search warrants. I have received training, both formal and informal, in the investigation of drug trafficking and money laundering, including, but not limited to, DEA basic and advanced drug investigations courses; street level drug enforcement; narcotics interdiction; wiretap investigations; and the DEA Basic Agent Training Academy located at Quantico, Virginia. Through my training, education and work experience, I have become familiar with the manner in which drug trafficking violations are committed.

     2.    This affidavit is submitted in support of an application for a search warrant for:

     a.    historical cell site location data for the cellular telephone assigned number (336) 929-2016 (TARGET TELEPHONE # 1) with service provided by T-Mobile USA, Inc. / Metro PCS  in the District of New Jersey, for the time period of September 1, 2018 through October 31, 2018.

     b.    historical cell site location data for the cellular telephone assigned number (336) 942-9810 (TARGET TELEPHONE #2) with service provided by T-Mobile USA, Inc. /Metro PCS in the District of

2

New Jersey, for the time period of October 4, 2018 through October 31, 2018.[1]

3.      I have been involved in this investigation since March 2017. The investigation targeted methamphetamine traffickers based in High Point and Archdale communities of Guilford County, NC. I have led, planned, and or participated in most of the operations or been informed by investigators of the details gathered during the course of the investigation. This affidavit represents details I directly participated or have been conveyed to me by fellow investigators. The information contained in this affidavit is submitted for the sole purpose of establishing probable cause for search warrants mentioned herein. As a result, it does not contain every fact known to me concerning this investigation. Based upon all of the facts set out in the paragraphs below, I allege the following:

        a.      that the target of this investigation was engaged in criminal activities, namely offenses involving the conspiracy to distribute controlled substances, in violation of Title 21, United States Code, Section 846 and the use of communications facilities in commission of narcotics offenses, in violation of Title 21, United States Code, Section 843(b);

4.      Based upon my training and experience, as well as the other sources

---

[1] Service to Target Telephone #2 started on October 4, 2018.

of information mentioned herein, I know the following:

> a.      that drug traffickers often utilize multiple cellular telephones in an attempt to thwart law enforcement from identifying the actual use of the telephone. I know that drug traffickers often utilize cellular telephones with fictitious or default subscriber information in an attempt to disguise the actual user of the cellular telephone.
>
> b.      that drug traffickers often utilize their cellular telephones to orchestrate and conduct their drug trafficking activities when they are not in the presence of each other.   These communications include but are not limited to telephone calls, text messages, voice messages, internet applications, facebook, snap chat and WhatsApp.
>
> c.      that drug traffickers will carry their cellular telephones with them during drug transactions in order to direct co-conspirators regarding meet locations and to warn of the presence of law enforcement.

### FACTS ESTABLISHING PROBABLE CAUSE

5.      Agents of the United States Department of Justice, Drug Enforcement Administration (DEA), (hereinafter agents) were conducting an investigation into the drug trafficking activities of subjects distributing multi-kilograms quantities of methamphetamine in the areas of High Point and

4

Archdale, North Carolina in the Middle District of North Carolina. Furthermore subjects/defendants of this investigation have been arrested and made admissions as to their involvement in the distribution of methamphetamine and specifically the use of Dominique Shantae LYTCH as a source of supply for methamphetamine.

7.     Agents as well as DEA Intelligence Research Specialists (hereinafter IRS) have analyzed the toll records of conspirators identified during the course of this investigation and can demonstrate these subjects shared communications in the form of voice telephone calls and text messages with LYTCH.

8.     On September 11 and 12, 2018, agents conducted interviews with a Wesley Kennedy at the time held in custody as a result a traffic stop conducted by the Davidson County Sheriff's Office during which Kennedy was found to be in possession of approximately 15 grams of methamphetamine. Additionally, Kennedy was jailed for a probation violation. Kennedy agreed to cooperate with investigators.   Kennedy named Dominique Shantae LYTCH AKA "D" as one of two persons he used as his primary source of supply for methamphetamine.   Kennedy initially stated he received approximately 8 ounces of methamphetamine daily from LYTCH for distribution.   Kennedy stated he had purchased methamphetamine from LYTCH at garage located at

5

813 South Hamilton Street and a residence located on Worth Street in High Point, North Carolina. Additionally, Kennedy stated the residence on Worth Street was occupied by a subject he knew by the moniker of Asian Billy who used the residence to sell methamphetamine provided by LYTCH.

9.     On September 18, 2018, DEA Greensboro Resident Office agents working in conjunction with High Point Police Department Detectives employed the services of an Archdale Police Department Confidential Source (CS-1) in order to purchase two (2) ounces of crystal methamphetamine from a Dominique Shantae LYTCH. CS-1 was accompanied by a second subject, hereafter referred to as CS-2, an Archdale Police Department Confidential Source. At approximately 3:10 p.m., CS-1 placed recorded telephone calls to LYTCH at TARGET TELEPHONE #1, who agreed to meet CS-1 at a residential address associated with LYTCH.     CS-1 was outfitted with a transmitter/receiver and provided $1,400.00 US currency for the purchase. While traveling to the residence, LYTCH called the informant and advised he was concerned law enforcement officers were in the area. LYTCH refused the sale of methamphetamine. CS-1 informed agents that CS-1 could approach a "middleman" known to CS-1 to be sourced by LYTCH to arrange the narcotic transaction. CS-1 identified the "middleman" as a Lyndsey Brock.

6

10. During the course of the operation, CS-1 shared text messages with LYTCH at TARGET TELEPHONE #1 which were preserved by agents who photographed the messages as observed from CS-1's device. CS-1 used the contact name "Big" for LYTCH's TARGET TELEPHONE#1. The conversation was as follows:

8:33 a.m. CS-1 to LYTCH: "Be ready for you bout 3"

8:55 a.m. LYTCH to CS-1: "Ok."

2:39 p,m. CS-1 to LYTCH: "Yo that time."

2:50 p.m. LYTCH to CS-1: "U ready."

3:02 p.m. CS-1 to LYTCH: "Same place?"

3:41 p.m. LYTCH to CS-1: "Y did u cum this way by my sister house"

3:41 p.m. CS-1 to LYTCH: "I didn't know which way the store was"

3:41 p.m. CS-1 to LYTCH: "Bro you aint gotta think any funny shit about me I'm just here to get my dope and make my money man"

3:42 p.m. LYTCH to CS-1: "I told yr girl to tell u go sophia"

3:43 p.m. CS-1 to LYTCH: "Bro the only other place ik is the camper on the gold course"

3:44 p.m. LYTCH to CS-1: "Williams grocery'

3:44 p.m. CS-1 to LYTCH: "Come on try to come quickly it's hot out here and my a.c. isn't the greatest"

7

3:59 p.m. CS-1 to LYTCH: "My girl is burning up"

4:00 p.m. CS-1 to LYTCH: "And the longer I sit around the more attention I draw to us and this car"

4:02 p.m. LYTCH to CS-1: "This bit h act crazy want pick up phone"

4:05 p.m. LYTCH to CS-1: "Bitch not gv nothing up"

4:25 p.m. CS-1 to LYTCH: "I don't live around here bro drive 30 mins to get here"

4:25 p.m. LYTCH to CS-1: "Call u when i get bak"

4:26 p.m. CS-1 to LYTCH: "I do this everyday I need to know it's there so we both make bread"

4:26 p.m. LYTCH to CS-1: "Going Salisbury cum u on way bak"

4:27 p.m. CS-1 to LYTCH sends photograph depicting US currency held in the hand of CS-1 and text: "Could have went a wealthier man"

Based on my training, experience, observations conducted during the course of surveillance, and a post operation debriefing of CS-1 after the operation, I believe the above text conversation between CS-1 and LYTCH demonstrated LYTCH used the device to coordinate an aborted narcotics transaction on September 18, 2018.

   10. On September 19, 2018, at approximately 11:35 a.m., CS-1 in the presence of DEA agents placed two telephone calls to LYTCH at telephone

8

number (336) 929-2016. LYTCH did not answer. At approximately 12:21 p.m., CS-1 placed a recorded telephone call to Brock requesting the purchase of 2 ounces of crystal methamphetamine. Brock advised that she would call CS-1 back shortly. At approximately 12:50 p.m., Brock advised that she was in possession of only one ounce of crystal methamphetamine and would need money, up front, to acquire a second ounce of crystal methamphetamine. At approximately 12:53 p.m., Brock advised that a third party, believed to be LYTCH, was "weighing it out." DEA agents believed when Brock used the term weighing it out, that she meant to say that LYTCH was in the process of doling out an ounce of crystal methamphetamine for sale. Additionally, Brock and CS-1 also agreed to meet in Archdale, NC along South Main Street, and that it would be approximately thirty minutes before the transaction would take place. DEA agents outfitted CS-1 with a transmitter/receiver capable of transmitting audio and video footage and provided CS-1 with $1,400.00 in United States currency. CS-1 was accompanied by a second Archdale Police Department Confidential Source (CS-2) who commonly accompanies CS-1. Both Confidential Sources were searched prior to the operation as well as the vehicle operated by the Confidential Sources. At approximately 1:16 p.m., CS-1 received a text from Brock requesting CS-1 meet Brock at 205 Gregg Street Archdale, NC. DEA agents dispatched CS-1 to the residence. At

9

approximately, 1:20 p.m., CS-1 arrived at the residence. CS-1 used the transmitter/receiver to capture the image of a Nissan Altima registered to Brock. Additionally, investigators observed the Nissan parked at the residence. The CS-1 used the transmitter/receiver to capture the image of Brock as she conversed with CS-1. CS-1 entered the residence with Brock. At approximately 1:31 p.m., Brock departed the residence operating the Nissan. Brock promptly returned to the residence. On Brock's return to the residence, CS-1 provided Brock the $1,400.00 in United States currency. At approximately 1:44 p.m., Brock departed the residence. Incidental to the investigation, CS-1 shared a conversation with a subject CS-1 identified as Brett Ferguson at the residence. CS-1 and Ferguson shared a conversation about the difficulties of the narcotics business. DEA agents and High Point Police Department Detectives conducted surveillance of Brock as she departed 205 Gregg Street operating the Nissan and followed her to 807 Worth Street High Point, NC a residence associated with LYTCH. At approximately 1:57 p.m., High Point Detectives observed a white Chevrolet Suburban arrive at 807 Worth Street. At approximately 2:05 p.m., CS-1 received a telephone call from Brock. CS-1 later reported Brock was informing the CS-1 that she was returning with the contraband methamphetamine. At approximately 2:07 p.m., High Point Police Department Detectives observed Brock operating the Nissan departing 807 Worth Street.

10

DEA agents conducted surveillance of Brock as she returned to 205 Gregg Street without stopping. At approximately 2:25 p.m., DEA agents observed Brock return to 2015 Gregg Street. The CS-1 and Brock engaged in conversation. Your affiant observed, via the transmitter/receiver used by the CS-1, the contraband crystal methamphetamine being placed on a digital scale with green lighted display. At approximately 2:49 p.m., CS-1 and CS-2 departed 205 Gregg Street. CS-1 and CS-2 met with DEA agents and collected the contraband methamphetamine, later processed as evidence, weighing approximately 39.9 grams, contained in a clear plastic bag, and dispatched to the DEA Southeast Laboratory for analysis. Subsequent analysis discovered the evidence was identified as Methamphetamine Hydrochloride with a net weight of 37.936 grams with 100% purity.

11. On October 9, 2019, at approximately 8:17 p.m., DEA agents met with Wesley Kennedy, then a confidential informant with the High Point Police Department, in order to attempt a controlled buy of methamphetamine from LYTCH. Earlier in the day, Kennedy contacted LYTCH at telephone number (336)709-2313 later determined to be subscribed to LYTCH's wife, Lolita Lytch, to prepare for the transaction in advance. LYTCH told Kennedy that he was selling methamphetamine for $650.00 an ounce. Kennedy was instructed by LYTCH that LYTCH would call later to confirm the time and

11

place of the transaction.

12.   At approximately 8:24 p.m., Kennedy placed a telephone call to LYTCH at telephone number (336)709-2313 in an effort to negotiate the sale and delivery of $2,160.00 worth of methamphetamine. LYTCH did not answer; however, Kennedy advised that he believed LYTCH to have a new telephone number. Kennedy knew locations that LYTCH frequented to sell narcotics and thought LYTCH might be at one of those locations. Kennedy stated that LYTCH frequented the Carolina Bingo located at 3718 East Kivett Street, High Point, North Carolina and 807 Worth Street, High Point, North Carolina. Agents outfitted Kennedy with a transmitter/receiver and searched Kennedy's person and vehicle for contraband and weapons. Agents dispatched Kennedy to the addresses frequented by LYTCH. Kennedy did not locate LYTCH. Kennedy and agents met after the attempts to located LYTCH. Kennedy advised he knew an Eddie Robin Simmons who was sourced narcotics by LYTCH and believed Simmons would be in possession of a telephone number for LYTCH. Kennedy believed he could acquire the current telephone number employed by LYTCH from Simmons. At approximately 8:59 p.m., agents dispatched Kennedy to Simmons residence located at 5537 Old Thomasville Road, High Point, North Carolina in order to acquire a new telephone number for LYTCH. At approximately 9:08 p.m., Kennedy arrived at Simmons's

12

residence, engaged with Simmons, carried on a conversation with LYTCH using Simmons's cellular telephone and acquired LYTCH's new telephone number TARGET TELEPHONE #2. During the phone conversation, Kennedy and LYTCH discussed conducting a narcotics sale for methamphetamine with both subjects agreeing to complete the transaction later in the evening on the return of Kennedy to the area of Archdale, North Carolina. Kennedy returned to meet with agents where his person and vehicle were searched for contraband.

13. At approximately 10:00 p.m., Kennedy, monitored with the transmitter/receiver, arrived at Cookout Restaurant located at 2923 S. Main Street, High Point, North Carolina which is near the Archdale city limits. Kennedy placed a telephone call to TARGET TELEPHONE #2. LYTCH answered the call and advised he needed to pick up his son and he would call Kennedy back in 20 min. At approximately 10:25 p.m., Kennedy was instructed by LYTCH to go to 205 Gregg Street, High Point, North Carolina and to stand by. Kennedy was led to believe that LYTCH was nearby and the transaction would go relatively quickly.

14. At 10:34 p.m., Kennedy arrived at 205 Gregg Street Archdale, NC. At 11:15 p.m., Kennedy called LYTCH and inquired about the delay. LYTCH advised that he was travelling to meet Kennedy and had just "weighed it out". At 11:55 p.m., Kennedy called LYTCH to check the status of the deal

and to see if LYTCH wanted to conduct it elsewhere. Both LYTCH and Kennedy agreed to conduct the transaction in the vicinity of Highway 62 and Suits Road in Archdale, North Carolina. Kennedy departed 205 Gregg Street and went to the area of Suits and Weant Roads. Kennedy travelled to the corner of Suits and Trotter Country Roads and met with LYTCH who was driving a black Mercedes sedan.

15. The transaction was completed at 12:04 a.m. and LYTCH left the area travelling on Weant Road toward Highway 62. An agent observed the Mercedes travel away from the meeting location and noted the Mercedes displayed a temporary North Carolina registration plate and last observed the Mercedes travelling from Kersey Valley Road onto Kivett Street toward High Point, North Carolina.

16. At 12:07 a.m., agents conducted a debriefing with Kennedy. Kennedy transferred custody of a black latex glove containing approximately 88.2 grams of suspected methamphetamine. Agents searched Kennedy and Kennedy's vehicle for contraband. Kennedy advised LYTCH was not accompanied and was operating a black 2000s Mercedes sedan and that the transaction occurred "window to window." Additionally, Kennedy stated LYTCH advised Kennedy to be careful departing the area.

14

17. Agents collected the suspected methamphetamine as evidence and submitted the evidence to the DEA Southeast Laboratory. Subsequent analysis discovered the exhibit had a net weight of approximately 84.8685 grams and did not contain controlled substances.

18. On January 7, 2019, agents conducted a post arrest interview with Lyndsey Brock. Brock advised she lived with Kennedy and Kennedy's girlfriend beginning at the end of February 2018. Brock stated Kennedy was selling 7 to 8 ounces of methamphetamine daily. Brock stated she became involved in the sale of methamphetamine during the summer of 2018. Brock described LYTCH as a large African American male who wore dread locks. Agents showed Brock a photograph depicting LYTCH. Brock stated the photograph depicted the person she knew as LYTCH AKA "D". Brock stated LYTCH maintained a residence on Worth Street, High Point, North Carolina where he sold narcotics. Brock stated LYTCH once asked Brock to travel in order to collect half a pound of methamphetamine. Brock surmised that Kennedy introduced her to LYTCH in order to get a reduction in price for methamphetamine if Brock agreed to work as a courier.

19. On February 15, 2019, agents conducted an interview with Brock in the presence of her attorney. Brock discussed specifically the events of September 19, 2018. Brock recollected that LYTCH was operating a large sport

15

utility vehicle such as a Chevrolet Suburban or a Dodge Durango and that the residence located on Worth Street, High Point, North Carolina was occupied by an Asian family. Additionally, Brock consented to a search of her cellular telephones seized at the time of her arrest. On February 19, 2019, an agent prepared a report containing text messages between LYTCH's TARGET TELEPHONE #1 and Brock's cellular telephone. The conversation was as follows:

1

| 2431 | +13369292016 | * DD | 19/09/2018 16:25:58 (GMT) | Sent | Sent | Phone | Outgoing | Need to see u ASAP have a lot of money waiting so let's get it |
|------|--------------|------|---------------------------|------|------|-------|----------|---------------------------------------------------------------|
| 2432 | +13369292016 | * DD | 19/09/2018 16:26:52 (GMT) | Read | Inbox | Phone | Incoming | Just got up |
| 2433 | +13369292016 | * DD | 19/09/2018 16:32:41 (GMT) | Sent | Sent | Phone | Outgoing | I need 2 for ████████ now |
| 2434 | +13369292016 | * DD | 19/09/2018 16:35:31 (GMT) | Sent | Sent | Phone | Outgoing | Gotta be in Raleigh at 2 |
| 2435 | +13369292016 | * DD | 19/09/2018 16:36:35 (GMT) | Read | Inbox | Phone | Incoming | U got his money |
| 2436 | +13369292016 | * DD | 19/09/2018 16:41:00 (GMT) | Sent | Sent | Phone | Outgoing | No I have the money to get one Was gonna see if you let me get the other one on front then I'll bring the money back to you for it and then buy me one |
| 2438 | +13369292016 | * DD | 19/09/2018 16:43:06 (GMT) | Read | Inbox | Phone | Incoming | Will see |
| 2439 | +13369292016 | * DD | 19/09/2018 16:43:29 (GMT) | Sent | Sent | Phone | Outgoing | I need it now not in 30 minutes |

2 Name of CS-1 redacted from text message

16

| 2440 | +13369292016 | * DD | 19/09/2018 16:44:55 (GMT) | Sent | Sent | Phone | Outgoing | How long will u be may have to go to my people u gonna be awhile |
|---|---|---|---|---|---|---|---|---|
| 2441 | +13369292016 | * DD | 19/09/2018 16:44:55 (GMT) | Read | Inbox | Phone | Incoming | Now u want to rush sumbody waiting on u all nite |
| 2442 | +13369292016 | * DD | 19/09/2018 16:45:36 (GMT) | Sent | Sent | Phone | Outgoing | I told u I was at Heathers |
| 2443 | +13369292016 | * DD | 19/09/2018 16:45:50 (GMT) | Sent | Sent | Phone | Outgoing | Ferg was there waiting for u |
| 2444 | +13369292016 | * DD | 19/09/2018 16:51:29 (GMT) | Sent | Sent | Phone | Outgoing | I have a lot gone today |
| 2445 | +13369292016 | * DD | 19/09/2018 16:51:56 (GMT) | Sent | Sent | Phone | Outgoing | I do need Two for him |
| 2446 | +13369292016 | * DD | 19/09/2018 16:52:28 (GMT) | Read | Inbox | Phone | Incoming | Tell bring money |
| 2447 | +13369292016 | * DD | 19/09/2018 16:53:57 (GMT) | Sent | Sent | Phone | Outgoing | I have the money for one he's not gonna give me that much money without the product in hand |
| 2448 | +13369292016 | * DD | 19/09/2018 16:54:31 (GMT) | Sent | Sent | Phone | Outgoing | So I guess I won't worry about him I have shit to do today I can't be running back-and-forth to meet you |
| 2449 | +13369292016 | * DD | 19/09/2018 16:58:41 (GMT) | Sent | Sent | Phone | Outgoing | So u coming or not if so how long |
| 2450 | +13369292016 | * DD | 19/09/2018 16:59:47 (GMT) | Read | Inbox | Phone | Incoming | Yea |
| 2451 | +13369292016 | * DD | 19/09/2018 17:00:11 (GMT) | Sent | Sent | Phone | Outgoing | How long cuz he bringing me the money |
| 2452 | +13369292016 | * DD | 19/09/2018 17:00:25 (GMT) | Sent | Sent | Phone | Outgoing | Meet me at Kevin's |
| 2454 | +13369292016 | * DD | 19/09/2018 17:05:23 (GMT) | Sent | Sent | Phone | Outgoing | How long would it take you to get to Heather's |

17

20. Based on the above information, the applicant believes there is Probable Cause to obtain historical cell location data information from the TARGET TELEPHONE #1 and TARGET TELEPHONE #2 used by Dominique Shantae LYTCH.

## INFORMATION TO BE SEARCH AND THINGS TO BE SEIZED

21. I anticipate executing these warrants under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrants to require T-Mobile to disclose to the government copies of the records regarding historical cell site location data for the cellular telephones assigned number (336) 929-2016 and (336) 942-9810, with service provided by T-Mobile from the time period September 1, 2018 to October 31, 2019 as to TARGET TELEPHONE #1 and October 4, 2018 through October 31, 2018 as to TARGET TELEPHONE #2.

22. Based on the above information, the applicant believes there is Probable Cause to obtain historical cell tower location data information from TARGET TELEPHONE #1 and TARGET TELEPHONE#2 for Dominique Shantae LYTCH.

## CONCLUSION

23. Based on the above information, I request the court issue the historical cell location data information from T-Mobile related to the

account associated with TARGET TELEPHONE #1 and TARGET
TELEPHONE #2.

24.     This Court has jurisdiction to issue the requested warrants
because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.
18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court is "a district
court of the United States in the Middle District of North Carolina that – has
jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

25.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law
enforcement officer is not required for the service or execution of this warrant
on the service providers.

19

26.    In order to complete a thorough investigation of all potential evidence, investigators need to obtain the historical cell site records on TARGET TELEPHONE #1 and TARGET TELEPHONE #2, which could provide valuable evidence, related to Dominque LYTCH's narcotics activity and establish his location during the events of September 1, 2018 through October 31, 2018.

JAMES P HUGHES
SPECIAL AGENT
DRUG ENFORCEMENT ADMINISTRATION

SWORN to and SUBSCRIBED before me this _23rd_ day of October, 2019. 8:45 AM

JOE L. WEBSTER
UNITED STATES MAGISTRATE JUDGE
MIDDLE DISTRICT OF NORTH CAROLINA

20